PER CURIAM.
We have for review a referee’s report recommending that Respondent Max Ricardo Whitney be found guilty of professional misconduct in violation of the Rules Regulating the Florida Bar (Bar Rules) and suspended from the practice of law for ninety days. The Florida Bar has filed a “Notice of Intent to Seek Review of Report of Referee” and Respondent has cross-petitioned, contesting the referee’s recommendation of guilt or, alternatively, requesting that the sanction be disapproved. We have jurisdiction. See art. Y, § 15, Fla. Const. We approve the findings of fact and recommendations of guilt, and disapprove the referee’s recommended sanction of a ninety-day suspension. We conclude that Mr. Whitney’s misconduct warrants a one-year suspension from the practice of law in Florida. We also conclude that the referee abused his discretion in denying a portion of the costs sought by the Bar.
FACTS
The Florida Bar filed a Complaint against Respondent based upon misconduct arising from Respondent’s representation of Dr. Michael G. Hill and Ms. Leila Mesquita de Oliveira, and Respondent’s conduct in response to a lawsuit filed by Dr. Hill against Respondent. The Bar alleged that Respondent violated the following Bar Rules, as they existed at the time of the complaint: 3-4.3 (the commission by a lawyer of any act that is unlawful or contrary to honesty and justice, whether the act is committed in the course of the attorney’s relations as an attorney or otherwise may constitute cause for discipline); 4-1.1 (competence); 4-1.3 (diligence); 4-1.4(a) (keeping client reasonably informed and promptly comply with requests for information); 4-1.4(b) (explaining a matter to client to extent reasonably necessary to permit informed decision); 4-1.16(d) (failing to take steps to the extent reasonably practicable to protect a client’s interest upon termination of representation); 4-3.3(a) (“A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal; (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client; (3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or (4) permit any witness, including a criminal defendant, to offer testimony or other evidence that the lawyer knows to be false. A lawyer may not offer testimony that the lawyer knows to be false in the form of a narrative unless so ordered by the tribunal. If a lawyer has offered material evidence and thereafter comes to know of its falsity, the lawyer shall take reasonable remedial measures.”); 4-3.4(a) (a lawyer shall not unlawfully obstruct an *1099 other party’s access to evidence); 4-3.4(b) (a lawyer shall not fabricate evidence); 4-3.4(c) (a lawyer shall not knowingly disobey an obligation under the rules of a tribunal); 4-3.4(d) (a lawyer shall not make a frivolous discovery request or intentionally fail to comply with a legally proper discovery request); 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); and 4-8.4(d) (a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice).
A referee was appointed to hold hearings and provide a report to the Court. The referee made the following findings of fact and recommendations.
On January 19, 2004, Dr. Hill hired Respondent to provide immigration and legal advice. At their initial meeting, Respondent was advised that Ms. de Oliveira, who was present at the meeting, was a native of Brazil and was in the United States illegally for the third time. Respondent was informed that she had received a letter from the United States Department of Justice banning her from the country for twenty years because of her two previous illegal entries into the United States. Respondent was further advised that Dr. Hill intended to marry Ms. de Oliveira, but that they were not engaged and Dr. Hill had only known her since November 2003 when she moved into his house.
Based upon their meeting, a fee agreement was executed, which provided for a flat fee of $15,000, plus a $5,000 deposit for costs. In the agreement, Dr. Hill was referred to as the client. The fee contract provided that Respondent would represent Ms. de Oliveira “in regard to all matters pertaining to her immigration status” and that Respondent’s obligations under the contract would terminate “upon decision of the Office of the Attorney General granting or denying permission for Leila Mes-quita de Oliveira to reenter the United States.” Dr. Hill provided Respondent with two checks, one dated January 26, 2004, in the amount of $10,000, and one dated February 6, 2004, in the amount of $9,365. Dr. Hill also paid directly for an airline ticket for Respondent to travel to Brazil. Respondent deposited the checks into his personal checking account, and used Dr. Hill’s funds “to pay his personal bills because respondent was experiencing financial problems at the time.”
In early 2004, Respondent twice traveled to Brazil to allegedly research the requirements for Dr. Hill and Ms. de Oli-veira to marry in Brazil. The referee found that this information was easily obtained without leaving the country. Respondent also claimed that one of the trips to Brazil was to obtain information on rental properties for Ms. de Oliveira and to verify her Brazilian documents. Because the location in which Respondent indicated that he found a residence for Ms. de Oli-veira was in an area other than where she lived in Brazil, the referee concluded that that trip was for a purpose other than for his client’s case. In September 2004, Respondent took possession of Ms. de Oli-veira’s Brazilian passport, which she advised him was a falsified document, as well as other original Brazilian documents. The referee found that Respondent “took no further meaningful action with respect to Ms. de Oliveira’s immigration matter.”
Dr. Hill contacted Respondent in late 2004 or early 2005 after failing to receive any communication from Respondent since hiring him in January 2004. Respondent advised Dr. Hill that he had not initiated the process to have Ms. de Oliveira remain in the United States or to reenter legally so that they could be married in the United States. Respondent advised Dr. Hill that Ms. de Oliveira needed to marry Dr. *1100 Hill in Brazil, and that he would only proceed further after Dr. Hill paid an additional fee of between $40,000 and $60,000. Dr. Hill terminated Respondent’s services and demanded a full refund of his fee and costs, as well as the return of Ms. de Oliveira’s documents. Respondent denied Dr. Hill’s request, stating that he had earned the fees and costs paid. Respondent failed to provide an accounting to Dr. Hill, and failed to timely return Ms. de Oliveira’s documents. Ms. de Oliveira executed a letter dated February 22, 2005, demanding return of her original documents. Respondent did comply with the written request from Ms. de Oliveira, who returned to Brazil in or around April 2005.
In July 2005, Dr. Hill filed a civil lawsuit against Respondent alleging breach of contract, legal malpractice, and unjust enrichment. (Hill v. Whitney, Case No. 05-CA-5999). Dr. Hill was represented by attorney Bonnie Jackson and Respondent was pro se. The referee found that “[Rjespon-dent engaged in a course of conduct where he was uncooperative in coordinating the scheduling of hearings.”
In an order entered on December 12, 2005, the trial court directed Respondent to produce responsive documents on or before December 19, 2005. Respondent failed to comply with that order and failed to appear for his duly noticed deposition on December 21, 2005. At no time did Respondent contact opposing counsel or file a notice of unavailability for his deposition. Not until January 4, 2006, did Respondent produce the documents sought by the request for production dated September 20, 2005, and which were ordered to be produced by December 19, 2005. Respondent did not produce all of the documents sought. On January 18, 2006, a hearing was held on Ms. Jackson’s second motion to compel. Respondent was admonished by the court and advised to fully cooperate with discovery. At Respondent’s deposition on January 27, 2006, Ms. Jackson learned of the outstanding documents when Respondent arrived with a client file containing documents that he had not previously produced pursuant to the request for production. Further, Respondent produced documents that were redacted without asserting an objection or otherwise indicating that a redaction had been made.
Respondent failed to produce Visa credit card statements or receipts that were responsive to Dr. Hill’s first set of interrogatories and that the circuit court had ordered him to produce. Ms. Jackson sought such records to document the expenditures Respondent made in Brazil that had been allocated to Dr. Hill’s cost deposit. In answering Dr. Hill’s request for production, Respondent stated that he did not advertise, when, in fact, he had a website which was discovered by Ms. Jackson.
The referee found that Respondent testified falsely and deceptively at his deposition. While he testified that the name of his law firm was “Max R. Whitney, P.A.,” Respondent failed to disclose that his website used the name “Max Whitney & Willie Jones Advogados Associados.” Moreover, the business card provided to Dr. Hill reflected the name “Carvalhosa & Whitney Direito Internacional,” while the Florida Secretary of State, Division of Corporations, reflects the firm registered under the name “The Law Offices of Max R. Whitney, P.A.” and includes an address different than the one Respondent testified to during his deposition. In addition, Respondent testified falsely that the only pending litigation in which he was involved was a suit against him by U.B. Vehicle Leasing, Inc., relating to a dispute as to the mileage of a car. However, a mortgage foreclosure action had been filed against Respondent on November 1, 2004, *1101 and was pending at the time of the deposition. Respondent falsely testified that the mortgage on his home had not been in foreclosure. The referee found Respondent’s failure to reveal the existence of the foreclosure action “particularly relevant to Dr. Hill’s lawsuit given respondent’s sworn deposition testimony on January 27, 2006, that he deposited the fees and costs Dr. Hill paid him into his personal checking account and used the funds to pay, among other things, the mortgage on his home.”
Ms. Jackson served a motion for sanctions and motion for entry of default judgment against Respondent on March 31, 2006. The circuit court entered an order on May 30, 2006, granting the motion for sanctions and entry of default judgment, striking Respondent’s defenses and awarding reasonable attorney’s fees and costs to Dr. Hill. The circuit court found that “[Rjespondent had ‘willfully failed and refused to comply with previous order [sic] of this Court, failed and refused to participate in pretrial discovery and provided falsified documents’ in the case.”
On October 4, 2007, the circuit court entered a final judgment against Respondent in favor of Dr. Hill, including $20,000 on principal, which Respondent has remitted to Dr. Hill through Ms. Jackson. Respondent appealed to the Fifth District Court of Appeal, which upheld the final judgment but remanded for a determination of the correct amount of attorney’s fees. See Whitney v. Hill, 1 So.3d 1157 (Fla. 5th DCA 2009). A Second Amended Final Judgment was entered on June 15, 2011. Respondent has not paid any of the additional $24,246 in attorney’s fees, expert fees, and taxable costs awarded to Dr. Hill.
The referee recommended that Respondent be found guilty of violating Bar Rules: 4-1.3 (diligence); 4-1.4(a) (keeping a client reasonably informed and promptly comply with requests for information); 4-1.4(b) (explaining a matter to the client to the extent reasonably necessary to permit informed decision); 4-1.16(d) (upon termination of representation, a lawyer shall take steps to protect a client’s interest); 4-3.3(a) (a lawyer shall not knowingly (1) make a false statement of material fact or law to a tribunal; (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client; (4) permit any witness to offer testimony or other evidence that the lawyer knows to be false); 4-3.4(a) (a lawyer shall not unlawfully obstruct another party’s access to evidence or otherwise unlawfully alter, destroy, or conceal a document or other material that the lawyer knows or reasonably should know is relevant to a pending or reasonably foreseeable proceeding); 4-3.4(b) (a lawyer shall not fabricate evidence); 4-3.4(c) (a lawyer shall not knowingly disobey an obligation under the rules of a tribunal); 4-3.4(d) (a lawyer shall not make a frivolous discovery request or intentionally fail to comply with a legally proper discovery request by an opposing party); and 4-8.4(d) (a lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice).
Although not expressly addressed in the referee’s report, the referee did not recommend that Respondent be found guilty of violating the following Bar Rules alleged in the complaint: 3-4.3 (the commission by a lawyer of any act that is unlawful or contrary to honesty and justice, whether the act is committed in the course of the attorney’s relations as an attorney or otherwise may constitute a cause for discipline); 4-1.1 (competence); 4-3.3(a) (a lawyer shall not knowingly: (3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be *1102 directly adverse to the position of the client and not disclosed by opposing counsel); and 4-8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).
With respect to Respondent’s representation of Dr. Hill, the referee found the testimony of the Bar’s expert witness pertaining to immigration law to be helpful. In addition, the referee found Ms. Jackson’s testimony to be “forthright” and credible. The referee found Respondent’s testimony “to be self-serving and, at times, contrary to previous testimony and/or statements.” In addition, the referee found Respondent’s testimony regarding the immigration matter to lack credibility.
ANALYSIS
(A) Rule Violations
Respondent claims that the referee’s findings of fact and recommendations of guilt as to each of the rule violations are erroneous. This Court has stated:
A referee’s findings of fact regarding guilt carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record. If the referee’s findings are supported by competent, substantial evidence, this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee. The party contending that the referee’s findings of fact and conclusions as to guilt are erroneous carries the burden of demonstrating that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions.
Florida Bar v. Nowacki, 697 So.2d 828, 832 (Fla.1997) (citations omitted). “An attorney cannot meet his burden by simply pointing to contradictory evidence when there is also competent, substantial evidence in the record to support the referee’s findings.” Florida Bar v. Glueck, 985 So.2d 1052, 1056 (Fla.2008). The Court has repeatedly stated that the referee’s factual findings must be sufficient under the applicable rules to support the recommendations as to guilt. See Florida Bar v. Shoureas, 913 So.2d 554, 557-58 (Fla.2005). Moreover, “[t]he referee is in a unique position to assess the credibility of witnesses, and his judgment regarding credibility should not be overturned absent clear and convincing evidence that his judgment is incorrect.” Florida Bar v. Tobkin, 944 So.2d 219, 224 (Fla.2006) (citing Florida Bar v. Thomas, 582 So.2d 1177, 1178 (Fla.1991)).
Rule 4-1.3. Rule 4-1.3 provides that “A lawyer shall act with reasonable diligence and promptness in representing a client.” Respondent’s position is that Dr. Hill was not the client and thus Respondent could not have violated rule 4-1.3 with respect to Dr. Hill. The referee expressly found that Dr. Hill and Ms. de Oliveira hired Respondent to provide them with immigration and legal advice. The retainer agreement identifies Dr. Hill as the client, and the referee found Dr. Hill to be credible. Next, with regard to the issue of diligence, the referee found in pertinent part as follows: “I do find the failure of the Respondent in not seeking information from the Justice Department relative to Ms. de Oliveira’s prohibition from being in this country was a failure to diligently represent his client(s),.... ” Before the referee and again before this Court, Respondent asserts that he did not take that action because he was concerned that a records request would jeopardize Ms. de Oliveira, who was in the United States illegally. Moreover, the referee found that “[b]eyond the two trips to Brazil, [one of which was for a purpose other than his client’s case,] respondent took no *1103 farther meaningful action with respect to Ms. de Oliveira’s immigration matter.” We conclude that the referee’s findings of fact are supported by competent, substantial evidence, which are sufficient to support the finding of guilt.
Rules 4-1.4(a) and (b). Rules 4-1.4(a) and 4-1.4(b), as applicable during the time of Respondent’s representation in this case, provided in pertinent part as follows:
Rule 4-1.4. Communication
(a) Informing Client of Status of Representation. A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) Duty to Explain Matters to Client. A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.
R. Regulating Fla. Bar 4-1.4 (2005).
Once again, Respondent’s position is that Dr. Hill was not the client and thus Respondent could not have violated rule 4-1.4 with respect to Dr. Hill. However, Respondent admits that he had two meetings with Dr. Hill and Ms. de Oliveira, as well as five or six telephone conversations with Dr. Hill. Also, the retainer agreement identified Dr. Hill as the client, so Respondent’s argument that Dr. Hill was not the client is without merit.
Next, the record shows that Dr. Hill did not receive any communication from Respondent since hiring him in January 2004, until Dr. Hill contacted Respondent in late 2004 or early 2005 to inquire as to the status of Respondent’s progress on the immigration matter. Thus, the record supports the referee’s recommendation of guilt for rule 4.1.4(a).
Next, the record indicates that Respondent failed to sufficiently explain matters to permit the clients to make informed decisions regarding the representation. Dr. Hill testified that Respondent did not explain what procedures would need to be followed to resolve the immigration matter. In addition, Dr. Hill testified that Respondent informed Ms. de Oliveira that she should remain in the United States and Respondent took possession of her documents. It was not until Dr. Hill contacted Respondent in late 2004 or early 2005 that Respondent finally informed Dr. Hill that the only way Dr. Hill and Ms. de Oliveira could legally marry was to travel to Brazil. Accordingly, the referee’s recommendation of guilt as to a violation of rule 4.14(b) is supported.
Rule 4-1.16(d). At the time of his representation of Dr. Hill, Rule 4-1.16(d) provided in pertinent part as follows:
(d) Protection of Client’s Interest. Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client’s interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee or expense that has not been earned. The lawyer may retain papers and other property relating to or belonging to the client to the extent permitted by law.
R. Regulating Fla. Bar 4 — 1.16(d) (2005).
Respondent argues that the referee found no rule violation, based upon Respondent’s return of Ms. de Oliveira’s original documents. Respondent is misguided in his argument. Here, the rule violation is Respondent’s failure to refund the unearned fees or expenses that he took from Dr. Hill. Respondent’s failure to protect the funds is shown by clear and convincing evidence. Dr. Hill paid Respondent a total *1104 of $19,365 for fees and costs, which Respondent deposited into his personal checking account and used to pay personal bills. Also, Respondent traveled to Brazil on two occasions to allegedly research issues related to the potential marriage of Dr. Hill and Ms. de Oliveira, but as found by the referee, Respondent could have easily obtained this same information without leaving the country and spending Dr. Hill’s funds on those trips. Further, one of Respondent’s trips, to purportedly obtain information for Ms. de Oliveira about rental properties and English schools, as well as to verify her Brazilian documents, was to a location other than where she lived in Brazil and gave rise to the referee’s conclusion that the trip was for a purpose other than his client’s case. This is especially noteworthy because Respondent did not report to Dr. Hill after he completed the trip. We also note that Respondent maintained no records relevant to his handling of Dr. Hill’s and Ms. de Oliveria’s legal matter. Accordingly, the referee’s findings of fact are supported by competent, substantial evidence, and these findings support the recommendation that Respondent is guilty of violating rule 4-1.16(d).
Rule 4-3.3(a). Respondent challenged the referee’s recommendation that he is guilty of violation rule 4-3.3(a). The rule, in pertinent part, provided as follows:
Rule 4-3.3 Candor Toward the Tribunal
(a) False Evidence; Duty to Disclose. A lawyer shall not knowingly:
(1) make a false statement of material fact or law to a tribunal;
(2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;
(4) permit any witness, including a criminal defendant, to offer testimony or other evidence that the lawyer knows to be false. A lawyer may not offer testimony that the lawyer knows to be false in the form of a narrative unless so ordered by the tribunal. If a lawyer has offered material evidence and thereafter comes to know of its falsity, the lawyer shall take reasonable remedial measures.
R. Regulating Fla. Bar 4-3.3(a) (2005).
The alleged misrepresentation to the tribunal underlying the referee’s recommendation of guilt regarding this rule pertains to Respondent’s representation of himself during the malpractice suit brought by Dr. Hill. Respondent had represented to the circuit court that he could not attend the duly noticed deposition on December 21, 2005, because, when he returned from Brazil, he was very ill; however, the medical records reflect that Respondent did not go to a medical clinic until December 23, 2005 — two days after the deposition — and that he merely had a rash. In addition, the records custodian for Respondent’s physician testified in a deposition that Respondent was treated solely for a skin rash. Further, the referee expressly found that “Respondent failed to comply with the court’s December 12, 2005 order and failed to appear for his duly noticed deposition on December 21, 2005. At no time did respondent file a notice of unavailability for his deposition nor did he contact opposing counsel.”
We find that there is competent, substantial evidence in the record to support the referee’s finding that Respondent made false representations to the tribunal in response to Ms. Jackson’s motion to compel Respondent’s appearance for deposition, and that the referee’s factual findings are sufficient to support the recommendation that Respondent be found guilty of violating rule 4-3.3(a).
*1105 Rule 4-3.4(a). Rule 4-3.4, Fairness to Opposing Party and Counsel, provides in pertinent part that a lawyer shall not “unlawfully obstruct another party’s access to evidence or otherwise unlawfully alter, destroy, or conceal a document or other material that the lawyer knows or reasonably should know is relevant to a pending or a reasonably foreseeable proceeding; nor counsel or assist another person to do any such act.” R. Regulating Fla. Bar 4-3.4(a).
Respondent contends that he was merely tardy in replying to the First Request for Production, and that he ultimately responded and provided various documents on three separate occasions to Dr. Hill’s counsel. The referee’s findings, which are supported by competent, substantial evidence, are to the contrary.
Respondent did not produce the required documents sought by the request for production dated September 20, 2005, until January 4, 2006, despite the fact that the production originally was required by October 20, 2005, and the court had thereafter ordered Respondent to comply with the production request on or before December 19, 2005. Further, Respondent failed to produce all the requested documents, a fact that Ms. Jackson discovered during Respondent’s deposition on January 27, 2006, when Respondent arrived with a client file containing documents that he had not previously produced pursuant to the request for production. Also, Respondent produced documents that were redacted without asserting an objection or otherwise indicating that a redaction had been made. In addition, Respondent failed to produce his Visa credit card account statements or receipts that the court had ordered him to produce that were responsive to the plaintiffs first set of interrogatories. Additionally, Respondent testified at his deposition that the name of his law firm was “Max R. Whitney, P.A.,” but failed to disclose that his website used the name “Max Whitney & Willie Jones Advogados Associados.” The business card Respondent provided to Dr. Hill and Ms. de Oliveira reflected another law firm name of “Carvalhosa & Whitney Direito Internacional.” The Florida Secretary of State, Division of Corporations, indicated that respondent’s law firm was registered with yet another name, “The Law Offices of Max R. Whitney, P.A.,” and cited a different address than the one Respondent testified to during his deposition. Next, Respondent falsely testified at his deposition that the only pending litigation in which he was involved was a suit against him by U.B. Vehicle Leasing, Inc., relating to a dispute as to the mileage of a car. Also, Respondent falsely testified that the mortgage on his home had not been in foreclosure. Respondent asserted frivolous objections to discovery requests on the basis of attorney-client privilege and withheld documents despite the fact the documents had originated from Dr. Hill and were public records. He also failed to provide a privilege log or otherwise comply with the discovery rules. There is no dispute that the circuit court struck Respondent’s defenses and entered a default judgment against him based upon his failure to comply with the discovery rules. Accordingly, there is competent, substantial evidence in the record to support the referee’s factual findings and those findings are sufficient to support the referee’s recommendation that Respondent violated rule 4-3.4(a).
Rule 4-3.4(b). Rule 4-3.4, Fairness to Opposing Party and Counsel, provides in pertinent part that a lawyer shall not “fabricate evidence, counsel or assist a witness to testify -falsely, or offer an inducement to a witness, except a lawyer may pay a witness reasonable expenses *1106 incurred by the witness in attending or testifying at proceedings.” R. Regulating Fla. Bar 4-3.4(b).
Respondent challenges the referee’s recommendation of guilt regarding this rule. The record shows that Respondent produced documents that were redacted without asserting an objection or otherwise indicating that a redaction had been made. Specifically, in response to the request for production, Respondent produced to Ms. Jackson a United States Citizenship and Immigration Services Checklist that contained no substantive information. During his deposition, while Respondent was paging through his client file, Ms. Jackson saw a document nearly identical to the one Respondent had produced on January 4, 2006, but this one contained substantive information. Respondent had no adequate explanation for his having redacted this document or for his failure to disclose the redaction to Ms. Jackson in his response to the request for production. Also, he failed to identify any privilege that applied to the redaction. Respondent redacted another document that he produced, also failing to disclose the redaction or identify any particular privilege that would apply to such redaction. This document purported to be a letter dated July 1, 2005, from Respondent to the Department of Homeland Security. Accordingly, there is competent, substantial evidence in the record to support the referee’s findings that Respondent, without explanation, produced documents purportedly pertaining to Dr. Hill and Ms. de Oliveira’s case that he had altered by removing information. These facts are sufficient to support the referee’s recommendation that Respondent fabricated evidence in violation of rule 4-3.4(b).
Rule 4-3.4(c). Respondent challenges the referee’s recommendation that he is guilty of violating rule 4-3.4(c). The rule provides in pertinent part that a lawyer shall not “knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.” R. Regulating Fla. Bar 4 — 3.4(c).
In granting Dr. Hill’s motion for sanctions, the circuit court expressly found “that Defendant has willfully failed and refused to comply with previous order [sic] of this Court, failed and refused to participate in pretrial discovery and provided falsified documents in the above-entitled action....” Although Respondent apparently was out of the country on the day that he was to comply with the circuit court’s December 12, 2005, order to compel, the record shows that Respondent did not make an appearance at his noticed deposition on December 21, 2005, or contact opposing counsel to make other arrangements. In fact, he did not produce documents until January 4, 2006. Accordingly, there exists competent, substantial evidence to support the referee’s finding that Respondent failed to comply with the circuit court’s order to compel, and such finding is sufficient to support the referee’s recommendation that Respondent violated rule 4-3.4(c).
Rule 4-3.4(d). Respondent asserts that the referee is unsupported in recommending that he violated rule 4-3.4(d). The rule provides in pertinent part that a lawyer shall not “in pretrial procedure, make a frivolous discovery request or intentionally fail to comply with a legally proper discovery request by an opposing party.” R. Regulating Fla. Bar 4-3.4(d).
The referee found that Respondent failed to timely respond to the first request for production of documents, and then failed to provide certain documents to opposing counsel. The record shows that, in response to interrogatories, Respondent refused to answer questions citing “attorney client privilege” though the lawsuit *1107 was brought by Dr. Hill regarding Respondent’s representation of Dr. Hill. In connection with his failure to turn over receipts related to his representation of Dr. Hill and Ms. de Oliveira, Respondent testified at his deposition that he gave all of his receipts to his accountant, who he identified at the time as Mr. Guerra. However, Respondent could not provide an address for his accountant, even though Respondent was allegedly at the accountant’s office one hour before the deposition. More than a month after his deposition, Respondent identified his accountant as Mr. Lemus. Considering the circuit court findings, there exists competent, substantial evidence to support the referee’s findings pertaining to Respondent’s discovery violations and the evidence is sufficient to support the recommendation as to guilt for a violation of rule 4 — 3.4(d).
Rule 4 — 8.4(d). Respondent asserts that “[n]ormally this rule is reserved for misconduct that occurs at the courthouse or in a court proceeding.” According to Respondent, because he is not guilty of the other rule violations, he is not guilty of violating this rule.
Rule 4-8.4(d) provides in pertinent part that a lawyer “shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice.” R. Regulating Fla. Bar 4-8.4(d).
Respondent’s conduct during discovery in the civil suit was prejudicial to the administration of justice because he engaged in a course of conduct aimed at delaying and defeating Dr. Hill’s lawful attempts to obtain evidence. Respondent’s conduct was not isolated and required the intervention of the trial court on at least two occasions to compel the production of documents and appearance for deposition. Accordingly, there is competent, substantial evidence in the record to support the referee’s findings of fact and the evidence is sufficient to support the recommendation that Respondent is guilty of violating rule 4-8.4(d).
(B) Discipline
Based upon the rule violations found by the referee, the Bar argues that a one-year suspension is appropriate, rather than the ninety-day suspension recommended by the referee.[1]
The referee found the following aggravating factors under Standard 9.22: (b) dishonest or selfish motive; (c) pattern of misconduct; (d) multiple offenses; (h) vulnerability of the victim(s); and (i) substantial experience in the practice of law. The referee found the following mitigating factors under Standard 9.32: (a) absence of prior disciplinary record; (g) character or reputation; and (k) imposition of other penalties and sanctions. In addition, the referee found as mitigating factors the length of time elapsing between the civil proceeding and Respondent’s ability to avoid disciplinary action.
The referee recommended a suspension after considering the following Standards for Imposing Lawyer Sanctions were ap *1108 plicable: Standards 4.43 (Lack of Diligence [public reprimand]); 4.62 (Lack of Candor [suspension]); 6.12 (False Statements, Fraud, and Misrepresentation [suspension] ); 6.22 (Abuse of the Legal Process [suspension]); and 7.2 (Other Duties Owed as a Professional [suspension]).
In reviewing a referee’s recommended discipline, the Court’s scope of review is broader than that afforded to the referee’s findings of fact because, ultimately, it is the Court’s responsibility to order the appropriate sanction. See Florida Bar v. Anderson, 538 So.2d 852, 854 (Fla.1989); see also art. V, § 15, Fla. Const. At the same time, the Court will generally not second-guess the referee’s recommended discipline, as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Florida Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999). We agree that a suspension is warranted, but find that the existing case law, in light of the aggravating and mitigating factors, indicates that the appropriate sanction is a one-year suspension.
Respondent’s misconduct encompasses numerous instances pertaining to both client representation and discovery-related violations, as compared to those cases where lesser sanctions were imposed for rule violations solely related to conduct pertaining to client representation or limited to discovery-related ethical violations. In Florida Bar v. Maier, 784 So.2d 411 (Fla.2001), the respondent received a sixty-day suspension for failure to act with diligence in pursuing a client’s application for alien labor certification, failure to keep the client reasonably informed, and failure to timely respond to Bar inquiries. Similarly, a sixty-day suspension was imposed in Florida Bar v. Forrester, 818 So.2d 477 (Fla.2002), where the attorney attempted to conceal evidence during a deposition. In Maier and Forrester, the number of rule violations was significantly less than is present in the instant case.
In addition, the Court has dealt seriously with attorneys who have demonstrated an egregious disregard for the judicial process. In Florida Bar v. Bloom, 632 So.2d 1016 (Fla.1994), the Court imposed a ninety-one-day suspension on a respondent who engaged in discovery violations in a lawsuit where he was named the defendant. The Court found that “Bloom’s flagrant disregard for the judicial process, as reflected by the facts of this case, warrants a suspension requiring proof of rehabilitation.” Id. at 1017. In Florida Bar v. Batista, 846 So.2d 479 (Fla.2003), a ninety-one-day suspension was also imposed where the respondent failed to represent his clients and improperly attempted to have his former clients sign false affidavits in exchange for return of their attorney fees.
The Court has imposed one-year suspensions in cases when respondents have essentially taken no action on behalf of their clients, resulting in the finding of numerous ethical violations. In Florida Bar v. Centurion, 801 So.2d 858 (Fla.2000), the respondent failed to take several actions with respect to many clients, resulting in dismissal in a number of cases and prejudice to the attorney’s clients. In Florida Bar v. Rotstein, 835 So.2d 241 (Fla.2002), the appropriate sanction was a one-year suspension. The respondent failed to act on the client’s claim before the statute of limitations had run, and then fraudulently created a letter to the client indicating that he had timely withdrawn and advised the client of the statute of limitations. Id. at 242. The respondent maintained the fraud before the Bar. Id. And in Florida Bar v. Shoureas, 892 So.2d 1002 (Fla.2004), the Court suspended the respondent for three years, where counsel accepted representa *1109 tion in two cases, collected a fee, and then took little or no action on behalf of his clients. The respondent also failed to keep his clients apprised of the status of their cases or to communicate with his clients. Id. at 1003.
Here, Respondent accepted a substantial fee from his client but did not perform notable work in furtherance of that representation. He also misused his client’s funds by twice traveling to Brazil, once for no apparent case-related reason and once as unnecessary to obtaining the information sought. While the immigration issue may have been complicated, Respondent did not communicate that issue to Dr. Hill and Ms. de Oliveira. Next, with respect to the malpractice action, Respondent failed to produce documents, did not appear for his first noticed deposition, and offered frivolous responses to the interrogatories. Respondent has not paid the portion of the judgment awarding attorney’s fees and costs in the malpractice action, and continues to refer to his conduct as negligent.
Based upon the facts in this case and established case law, we find the referee’s recommended sanction of a ninety-day suspension unsupported and instead impose a one-year suspension.
(C) Bar Costs
The referee awarded the Bar costs in the amount of $14,887.62, disallowing $3,170.80 of its costs after Respondent filed a motion objecting to some of the Bar’s costs. The referee’s report does not fully discuss his decision regarding costs, but the report indicates that no investigative costs ($609.14 sought) and certain costs for expert fees ($2560) were not awarded to the Bar.
Rule 3-7.6(q)(l) sets out allowable taxable costs. Pertinent to the instant case are rules 3-7.6(q)(l)(A) (investigative costs, including travel and out-of-pocket expenses) and 3-7.6(q)(l)(F) (witness expenses, including travel and out-of-pocket expenses). Pursuant to rule 3-7.6(q)(3) (Assessment of Bar Costs), “[w]hen the bar is successful, in whole or in part, the referee may assess the bar’s costs against the respondent unless it is shown that the costs of the bar were unnecessary, excessive, or improperly authenticated.” Under the rule, “[t]he referee shall have discretion to award costs and, absent an abuse of discretion, the referee’s award shall not be reversed.” R. Regulating Fla. Bar 3-7.6(q)(2). Here, there has not been a showing that the Bar’s costs were unnecessary, excessive, or improperly authenticated. Thus, the issue is whether the referee abused his discretion in completely disallowing investigative fees and in disallowing the expert fees in the amount of $2560.
Significantly, all of the costs listed on the Bar’s affidavit are permitted as taxable costs. Respondent has made no showing that the costs were excessive. Completely disallowing investigative costs is an abuse of discretion. Moreover, it is not unreasonable to allow costs for the time that the expert waited to give testimony or for an expert’s report. The Court has stated that “ ‘[w]here the choice is between imposing costs on a bar member who has misbehaved and imposing them on the rest of the members who have not misbehaved, it is only fair to tax the costs against the misbehaving member.’ ” Florida Bar v. Head, 27 So.3d 1, 10 (Fla.2010) (quoting Florida Bar v. Kassier, 730 So.2d 1273, 1276 (Fla.1998)). Accordingly, we disapprove the referee’s award of costs and award the Bar costs in the amount of $18,056.76, the amount requested in its Second Amended Request for Costs. Cf. Florida Bar v. Rousso, 117 So.3d 756, 769 (Fla.2013) (concluding that the referee abused his discretion in reducing the Bar’s costs based upon an “equitable adjustment”); see also Florida Bar v. Dove, 985 *1110 So.2d 1001, 1011 (Fla.2008) (rejecting lawyer’s argument for a percentage system for costs in Bar disciplinary cases).
CONCLUSION
Accordingly, we approve the referee’s findings of fact and recommendations of guilt. Further, we disapprove the referee’s recommendation of a ninety-day suspension and award of costs. Max Ricardo Whitney is hereby suspended from the practice of law in Florida for one year. The suspension will be effective thirty days from the date of this opinion so that Respondent can close out his practice and protect the interests of existing clients. If Mr. Whitney notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Mr. Whitney shall fully comply with Rule Regulating the Florida Bar 3-5.1(h). Further, Mr. Whitney shall accept no new business from the date this opinion is issued until he is reinstated by an order of this Court.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300,' for recovery of costs from Max Ricardo Whitney in the amount of $18,056.76, for which sum let execution issue.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.

. Respondent seeks to invoke the defense of laches to the instant case. We reject Respondent's argument, as the facts remain that the Bar deferred proceeding on Dr. Hill's complaint until completion of the civil litigation between Respondent and Dr. Hill, and much of the delay in that litigation is attributable to Respondent, either as the result of his discovery misconduct or in seeking to appeal the final judgments entered in the case. In addition, Respondent sought additional time for the referee to file his report in this action to permit Respondent additional time to locate a witness in Brazil. Thus, Respondent is the source of the delays. Further, Respondent offers no argument that he was prejudiced by the Bar’s decision to defer proceeding on this matter until the civil suit was resolved, or by the delay of the filing of the official complaint.